**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000480
28-FEB-2025
08:13 AM
Dkt. 137 SO**

NO. CAAP-21-0000480

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


LIBERTY SURPLUS INSURANCE CORPORATION
a/s/o INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL,
also known as OAHU SOUTH FOURSQUARE CHURCH,
Plaintiff-Appellee/Cross-Appellant, v.
STATE OF HAWAI'I, Defendant-Appellant/Cross-Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10; and
DOE GOVERNMENTAL UNITS 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC141002261)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting C.J., and Wadsworth and McCullen, JJ.)

This appeal stems from a subrogation action brought by
Plaintiff-Appellee/Cross-Appellant Liberty Surplus Insurance
Corporation (**Liberty Surplus**), as subrogee of International
Church of the Foursquare Gospel, also known as Oahu South
Foursquare Church (the **Church**), against Defendant-Appellant/
Cross-Appellee State of Hawai'i (**State**).  Following a bench
trial, the Circuit Court of the First Circuit (**Circuit Court**)
entered judgment in favor of the State on Counts I through III of
the Verified Complaint (**Complaint**), and judgment in favor of
Liberty Surplus and against the State on Count IV in the amount
of $88,856.63.[1]

---

[1]    The Honorable John M. Tonaki presided.

The State appeals from the Circuit Court's: (1) April 30, 2021 Findings of Fact, Conclusions of Law, and Order (**FOFs/COLs**); (2) June 28, 2021 Judgment; and (3) August 2, 2021 "Order Denying [State's] Non-Hearing Motion to Alter or Amend Judgment Entered June 28, 2021, Filed July 8, 2021." Liberty Surplus cross-appeals from the FOF/COLs and the Judgment.

In November 2012, during a period of heavy wind and rain, a portion of the roof of the Farrington High School auditorium collapsed, damaging property stored there by the Church. The Church's insurer, Liberty Surplus, paid the Church $271,795.22 to compensate it for its resulting damages. Liberty Surplus then sued the State, alleging that the Church was leasing the auditorium from the State at the time of the roof collapse, and the collapse was caused by the State's failure to "properly design, inspect, construct, maintain and/or repair" the roof. The Complaint asserted claims for breach of contract (Count I), breach of the warranty of fitness or suitability (Count II), breach of the warranty of quiet enjoyment (Count III), and negligence (Count IV).

Following the March 2021 bench trial, the Circuit Court found the State liable for negligence, concluding that "[the] State breached its duty to the persons using the Auditorium to take reasonable steps to eliminate the unreasonable risk of danger posed by an unstable roof." The court further concluded that "the Church, as the recurring possessor of the premises, was comparatively fifty percent (50%) negligent" by conducting certain roof renovations without adequate investigation. The court determined that Liberty Surplus's "compensable damages are the direct damages to the Church's equipment caused by the roof collapse . . . valued at $177,713.26[,]" and reduced that amount by 50% to account for the "negligence attributable to the Church."

On appeal, the State contends that the Circuit Court erred in: (1) "finding the State negligent in the absence of evidence to prove that the State had notice of an unreasonable risk of harm posed by the unknown, unobservable defect in the original design of the auditorium roof"; (2) "failing to reduce

2

damages awarded to [Liberty Surplus] by 95-97% based on uncontested expert testimony that 95-97% of the cause of the roof collapse was attributable to a defect in the original structural design of the roof by a private architectural firm"; (3) "failing to further reduce damages awarded against the State based on the court's finding that the . . . Church was 50% comparatively negligent"; and (4) "awarding [Liberty Surplus] damages in the amount of $88,856.53 absent [sufficient] admissible evidence . . . ."

On cross-appeal, Liberty Surplus contends that the Circuit Court erred in entering COLs 14, 16, 17, 18, 19, and 20, leading the court to wrongly determine compensable damages and to wrongly reduce that amount by 50%.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve the parties' contentions as follows.

Initially, the State contends that the Circuit Court erred in finding the State negligent for the roof collapse in the absence of evidence it had notice of a dangerous condition. This contention is dispositive.

After the roof collapse, the State hired KAI Hawaii, a structural engineering firm, to determine the cause. Based on the firm's investigation report and the testimony of its structural engineer Jonathan Murai (**Murai**), the Circuit Court entered the following uncontested FOFs regarding the cause of the collapse, which are binding on appeal, see In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002):

> 21. KAI Hawaii's investigation consisted of the site visits, a review of the original structural plans, a review of documentation concerning renovations to the Auditorium, and the creation of a computer model of the original design of the Auditorium.
>
> 22. Based on their investigation, KAI Hawaii concluded that the Auditorium roof collapse was caused by a defect in the original 1953 structural design of the roof by the private architectural firm.
>
> 23. The original structural design of the Auditorium roof was defective because one of the five trusses upholding the roof, Truss 2, bore the weight of a

> <u>concrete lighting balcony, which exceeded the code prescribed load from the very beginning</u>.

24.   Truss 2 was not designed to support the weight of the lighting balcony.

. . . .

29.   The collapse of Truss 2 occurred when the center of Truss 2 buckled and fell downward, pulling both ends of the truss inward and prying the anchor bolts out of the top of the pilasters[, which were columns that were built into the walls to support the trusses].

30.   The collapse was a sudden failure; not gradual.

31.   <u>According to Mr. Murai, the defect in the original structural design, the overloading of Truss 2, was 95%-97% of the cause of the roof collapse</u>.

32.   Mr. Murai testified that the remaining 3%-5% of the cause of the roof collapse was attributable to: (1) Roof renovation work over Truss 2 which left in place the existing built-up roofing material; (2) Other equipment, like lights and speakers, added to the lighting balcony; and (3) The heavy rain and wind on the day of the roof collapse.[2]

33.   <u>Mr. Murai testified further that if Truss 2 had been designed correctly, the additional weight would not have caused the roof to collapse</u>.

34.   This testimony by Mr. Murai was given to a reasonable engineering probability.

. . . .

38.   There was no evidence establishing that water leaks anywhere in the Auditorium were the cause of the collapse of Truss 2 or the roof.

(Emphases and footnote added.)

At trial, Murai also testified that there was no reason to inspect the auditorium trusses because they were "interior" trusses and "kept dry." According to Murai, because the trusses were interior trusses, "there was really no maintenance required." Liberty Surplus offered no expert testimony regarding any alleged conditions or observations that should have made the

---

[2]   Regarding the roof renovation work, the Circuit Court found that in November 2001, the Church paid a contractor to renovate the auditorium roof over the area that later collapsed; the contractor failed to remove existing roofing material before re-roofing the affected area; and "Murai testified that added roofing material over the affected area was one of the factors contributing to the 3%-5% of the cause of the roof collapse." Regarding the equipment added to the lighting balcony, the Circuit Court found that numerous lights were affixed to the balcony before the roof collapse, and "Murai testified that the added weight of the lights on [the] balcony were [sic] one of the factors contributing to the 3%-5% of the cause of the roof collapse."

State aware of any problem with the structural integrity of the trusses.

Nevertheless, the Circuit Court concluded in COLs 13 through 15, as follows:

> 13. While [the] State did not have actual knowledge of the problems with Truss 2, . . . it should have known of the dangerous condition.
>
> 14. However, [the] State abdicated its maintenance responsibility over the Auditorium to the Church and allowed several renovations which overloaded an already defectively designed area of the Auditorium roof.
>
> 15. By failing to closely oversee the addition of lighting and re-roofing of the Auditorium and by failing to conduct an examination of the structure which included a review of whether the 56-year-old roof could bear the additional load of the renovations, [the] State <u>breached its duty</u> to the persons using the Auditorium <u>to take reasonable steps</u> to eliminate the unreasonable risk of danger posed by an unstable roof.

(Emphasis added.) Thus, it appears that the court determined in COL 13 that the State's constructive knowledge of "the problems with Truss 2" triggered a legal duty to take reasonable steps to eliminate the unreasonable risk of danger, and in COLs 14 and 15 that the State breached that duty by failing to take such steps.[3]

The State argues that "[b]ased on the [FOFs] and the absence of any other evidence of 'notice' to the State of an

---

[3] As the supreme court has stated:

> Duty is the first of the four well-established elements of a claim for relief founded on negligence; to wit:
>
> (1) A *duty* or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;
>
> (2) [a] failure on the defendant's part to conform to the standard required: a breach of the duty;
>
> (3) [a] reasonably close causal connection between the conduct and the resulting injury; and
>
> (4) [a]ctual loss or damage resulting to the interests of another.

Bhakta v. County of Maui, 109 Hawai'i 198, 211, 124 P.3d 943, 956 (2005) (quoting Doe Parents No. 1 v. State, Dep't of Educ., 100 Hawai'i 34, 68, 58 P.3d 545, 579 (2002)).

unreasonable risk of harm posed by Truss 2, the court's [COL 13] that the State 'should have known of the dangerous condition' . . . is in error." "Consequently, the State had no duty to eliminate the unknown, unobservable 'dangerous condition,' . . . [and Liberty Surplus] failed to prove negligence against the State . . . ."

For a negligence claim based on premises liability, the Hawaii Supreme Court has held:

> [I]f a condition exists upon the land which poses an unreasonable risk of harm to persons using the land, then the possessor of the land, if the possessor knows, or should have known of the unreasonable risk, owes a duty to the persons using the land to take reasonable steps to eliminate the unreasonable risk, or adequately to warn the users against it.

Corbett v. Ass'n of Apt. Owners of Wailua Bayview Apts., 70 Haw. 415, 417, 772 P.2d 693, 695 (1989). The plaintiff must establish that the defendant owner or occupant "knows or should have known of the hazard or defect which caused the injury. Liability cannot be imposed [when the possessor of land] has not been put on actual or constructive notice of the unsafe condition or defect that [allegedly] causes plaintiff['s] injury." Harris v. State, 1 Haw. App. 554, 557, 623 P.2d 446, 448 (1981) (citing 62 Am. Jur. 2d, Premises Liability, § 27 at 258).

Here, the Circuit Court found that the State did not have actual notice of the structural defect in Truss 2, but did have constructive notice. "Constructive notice arises as a legal inference, where circumstances are such that a reasonably prudent person should make inquiries, and therefore the law charges a person with notice of facts which inquiry would have disclosed." SGM P'ship v. Nelson, 5 Haw. App. 526, 529, 705 P.2d 49, 52 (1985) (internal quotation marks, citation, and brackets omitted) (quoting Germany v. Murdock, 662 P.2d 1346, 1348 (1983)).

At trial, there was no testimony, expert or otherwise, on any alleged conditions or observations that should have placed the State on notice of an imminent roof collapse or any other problem with the structural integrity of the auditorium. Nor was there any testimony that re-roofing or the addition of lighting

6

to the balcony should have alerted the State to potential danger. To the contrary, Murai's undisputed testimony, reflected in FOF 33, was "that if Truss 2 had been designed correctly, the additional weight [of the re-roofing and lighting] would not have caused the roof to collapse." Liberty Surplus did present evidence about water leaks in the auditorium, but the court found, and Liberty Surplus does not dispute, there was no evidence that these leaks caused the collapse of Truss 2.

Liberty Surplus argues that the State should have known of the dangerous condition posed by Truss 2 because "the State had the opportunity to complete a thorough inspection of the facilities and an examination of structural plans to determine any defect or compliance with the Building Code[,]" after the auditorium was transferred to the State in 1965, and periodically thereafter. But Liberty Surplus presented no evidence that the State should have conducted such an inspection and examination when the auditorium was transferred to the State or at any later time, or that such actions would have revealed the hidden defect in Truss 2. See SGM P'ship, 5 Haw. App. at 529, 705 P.2d at 52. Similarly, Liberty Surplus presented no evidence that closer oversight by the State of the addition of lighting and re-roofing of the auditorium would have revealed the hidden defect in Truss 2. Nor does Liberty Surplus offer any authority imposing a legal duty on the purchaser or other transferee of property to examine a building's structural plans upon transfer or thereafter — and incur the expense of doing so — merely to insure that the building contains no hidden defect.

Moreover, the evidence established that in September 2012, two months before the collapse, KAI Hawaii did inspect the exposed structural elements of the auditorium, including those visible in the attic, on the lighting balcony and on the roof, as part of a campus-wide master planning project for Farrington High School. The inspection assessed only visible conditions and found no significant structural concerns. Murai testified that there were no signs of an imminent roof collapse in September 2012; signs that a structural engineer would look for included large deflections or sagging of a truss or significant corrosion

to a truss; and KAI Hawaii observed no such sagging or deflection in Truss 2, or any significant corrosion to Truss 2. Liberty Surplus offered no evidence that this inspection was inadequate or that disputed Murai's testimony that because the trusses were interior trusses and kept dry, there was no reason to inspect them and no maintenance required.

On this record, there was no substantial evidence of circumstances that would lead a reasonably prudent person to inquire into whether the condition of Truss 2, or the addition of lighting and re-roofing of the auditorium, posed an unreasonable risk of harm to persons using the auditorium. Accordingly, there was no substantial evidence supporting the Circuit Court's conclusion in COL 13 that the State "should have known of the dangerous condition" posed by Truss 2. The court clearly erred in reaching this conclusion, which was the basis for the further erroneous conclusion that the State had a legal duty to take reasonable steps to eliminate the related risk. Absent such a duty, Liberty Surplus failed to prove its negligence claim against the State. COLs 14 and 15, which address the State's alleged breach of duty, cannot make up for this missing element. See Kahoʻohanohano v. Dep't of Human Services, 117 Hawaiʻi 262, 287 n.31, 178 P.3d 538, 563 n.31 ("[I]n order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages." (citing Takayama v. Kaiser Found. Hosp., 82 Hawaiʻi 486, 498–99, 923 P.2d 903, 915–16 (1996))). The Circuit Court thus clearly erred in finding the State liable for negligence, and in entering judgment in favor of Liberty Surplus on Count IV of the Complaint.

In light of our disposition, we need not reach the remaining issues raised by the State on appeal and by Liberty Surplus on cross-appeal.

For the reasons discussed above, we vacate the June 28, 2021 Judgment to the extent it entered judgment in favor of Liberty Surplus and against the State on Count IV of the Complaint in the amount of $88,856.63. We affirm the Judgment in all other respects. We remand the case to the Circuit Court with

instructions to enter judgment in favor of the State and against Liberty Surplus on Count IV of the Complaint.

DATED:  Honolulu, Hawaiʻi, February 28, 2025.

On the briefs:

Mark M. Nomura and
Marie Manuele Gavigan,
Deputy Attorneys General,
for Defendant-Appellant/Cross-
Appellee.

Jay T. Suemori
(Suemori & Associates) and
Neal K. Aoki
(Law Offices of Neal K. Aoki,
LLLC)
for Plaintiff-Appellee/Cross-
Appellant.

/s/ Katherine G. Leonard
Acting Chief Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Sonja M.P. McCullen
Associate Judge